**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EBCF ENTERPRISES, INC.,        )
ANGELO PALIVOS, and            )
CHRISTINA PALIVOS,            )
                                  )
       Plaintiffs,             )
                                  )       No. 20 C 5476
       v.                   )
                                  )       Judge Jorge L. Alonso
ERIE INSURANCE EXCHANGE,    )
                                  )
       Defendant.           )

## <u>MEMORANDUM OPINION AND ORDER</u>

After their automobile insurance company (defendant Erie Insurance Exchange ("Erie"))

sent them a rebate worth 30% of two months' premium, plaintiffs EBCF Enterprises, Inc.

("EBCF"), Angelo Palivos ("Angelo") and Christina Palivos ("Christina") filed a first amended

complaint asserting that defendant's failure to provide a larger rebate breached their insurance

contracts, violated the Illinois Consumer Fraud and Deceptive Trade Practices Act and

constituted unjust enrichment.[1]  Erie moves to dismiss.  For the reasons set forth below, the

Court grants the motion to dismiss.

---

[1] The Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).
Defendant asserts there are more than 68,000 class members (Notice of Removal ¶ 17) and that
the amount in controversy exceeds $5,000,000.00 (Notice of Removal ¶¶ 23, 31).  Named
plaintiff EBCF is a citizen of Illinois (the State in which it is incorporated and the location of its
principal place of business.  (Am. Complt. ¶ 9).  Defendant is a citizen of Pennsylvania (its State
of incorporation and the location of its principal place of business).  (Am. Complt. ¶ 8; 28 U.S.C.
§ 1332(d)(10)).  Thus, at least one plaintiff is "a citizen of a State different from any defendant."
28 U.S.C. § 1332(d)(2)(A).

I.      **BACKGROUND**

Plaintiffs believe defendant obtained a windfall when the COVID-19 pandemic reduced driving and, hence, automobile accidents, thereby increasing defendant's profits. The following facts are from plaintiffs' first amended complaint, and the Court takes them as true.

Plaintiffs allege "[a]uto insurance rates, including those set by Erie, are intended to cover the claims and expenses that [insurance companies] expect to occur in the future, extrapolated from historical data." (Am. Complt. ¶ 23). Plaintiffs allege that when Illinois Governor J.B. Pritzker issued "stay-at-home" orders during the spring of 2020 in response to the COVID-19 pandemic, it resulted in fewer people driving, which resulted in fewer automobile accidents. At that point, according to plaintiffs, the premiums plaintiffs had already paid for automobile insurance during that time "became unconscionably excessive." (Am. Complt. ¶ 23). Plaintiffs allege that "[i]n spring 2020, Erie promised to pay dividends amounting to 30% of two months' premiums," but, according to plaintiffs, that refund "was and is inadequate to compensate for the excessive premiums that its customers have paid as a result of COVID-19." (Am. Complt. ¶¶ 29-30).

Plaintiffs allege that they purchased automobile insurance from Erie. Specifically, plaintiff EBCF purchased a policy that was in effect from September 23, 2019 through September 23, 2020. Erie renewed the policy for the period of September 23, 2020 through September 23, 2021. Similarly, plaintiffs Angelo and Christina Palivos purchased a policy in effect from February 1, 2020 through February 1, 2021. They renewed the policy for the period of February 1, 2021 through February 1, 2022.

Based on these allegations, plaintiffs assert claims for breach of contract, unjust enrichment and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act. Defendant moves to dismiss.

Defendant attached to its motion to dismiss a copy of each plaintiff's policy. The Court may consider those documents without converting the motion to dismiss to a motion for summary judgment, because the policies are referred to in plaintiffs' complaint and are central to plaintiffs' claims. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

EBCF's policy provides, in relevant part:

> In return for **your** timely premium payment and **your** compliance with all the provisions of this policy, **we** agree to provide the coverages **you** have purchased.
> * * *
> **You** may cancel the entire policy, any **auto**, or any coverage by mailing **us** written notice stating at what future date **you** want the cancellation to take effect.
> * * *
> If **your** policy is cancelled, **we** will return no more than the pro rata unused share of **your** premium.
> * * *
> **Your** policy may be changed by asking **us**. Asking our Agent is the same as asking us. **Your** request must contain enough information to identify **you**. If **we** agree with **your** request, **we** will then issue a **Declarations**. If there is a change in the in-formation used to develop the policy premium, **we** may adjust your premium during the policy period effective as of the date the change occurred. Premium adjustments will be made using the rules and rates in effect for **our** use.

[Docket 45-1 at 7, 26, 27].

Angelo and Christina Palivos's policy provides, in relevant part:

> In return for "your" timely premium payment and "your" compliance with all of the provisions of this policy, "we" agree to provide the coverages "you" have purchased. "Your" coverages and limits of protection are shown on the "Declarations," which are part of this policy.
> * * *
> "You" may change this policy by asking "us." Asking "our" Agent is the same as asking "us." "Your" request must contain enough information to identify "you." If "we" agree with "your" request, "we" will then issue a "Declarations." If there

is a change in the information used to develop the insurance premium, "we" may
adjust "your" premium during the policy period effective as of the date the change
occurred. Premium adjustments will be made using the rules and rates in effect
for "our" use. Changes that may result in a premium increase or decrease during
the policy period include, but are not limited to:

1. change to "your" address;
2. change to the location where the insured vehicle is principally garaged;
3. change in "your" marital status;
4. change to the distance "you" drive to or from work or school;
5. change in the use of "your" vehicle (i.e., business use of the vehicle);
6. addition or deletion of an "auto" or lienholder or another party having a
financial interest in "your" vehicle(s);
7. addition or deletion of a licensed driver in "your" household regardless of
whether they have their own "auto" and insurance; and
8. changes which modify the appearance or performance of "your" vehicle with
customized equipment. Customized equipment includes those items or changes
that are other than what is offered by the auto manufacturer of that specific model
of vehicle or what is added or altered by the auto dealer when the vehicle is new
at the time of original sale. Equipment added to a vehicle to allow a disabled
person to enter, exit or operate the vehicle is not considered customized
equipment.

* * *

"You" may cancel this policy by mailing or delivering to "our" Agent or "us"
written notice stating at what future date "you" want the cancellation to take
effect. "We" may waive these requirements by confirming the date of
cancellation to "you" in writing.

* * *

If this policy is cancelled, "we" will return the pro rata unused share of "your"
premium.

[Docket 45-2 at 7, 9-10].

## II.   STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P.

12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but

mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Where a plaintiff alleges a breach of contract, a district court "may determine [the contract's] meaning as a matter of law" if "the contract is unambiguous." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000). An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *McWane*, 224 F.3d at 584.

## III. DISCUSSION

### A. Illinois Consumer Fraud Act

In Count II, plaintiffs assert that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 et seq. Plaintiffs allege:

> Erie's conduct offends the public policy of Illinois that insurance premiums are to be based on risk. The premiums charged and collected by Erie are excessive and

not based on risk after the COVID-19 pandemic dramatically reduced the amount
of driving and the number of insurance claims.

(Am. Complt. ¶ 65). Plaintiffs allege Erie's conduct "is immoral, unethical and unscrupulous

because Erie has taken advantage of the global COVID-19 pandemic for its own financial gain."

(Am. Complt. ¶ 67). Plaintiffs allege they were injured in that they "paid excessive premiums to

Erie and did not have those premiums refunded[.]" (Am. Complt ¶ 72). They allege that injury

was "significant" in that they should have received a 30% "average premium refund," in the

absence of which Erie "obtain[ed] an unfair windfall[.]" (Am. Complt ¶ 69).

To state a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act,

plaintiffs must allege: "(1) a deceptive act or [unfair] practice by the defendant; (2) the

defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in

the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5)

proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100,

180 (Ill. 2005). "Recovery may be had for unfair as well as deceptive conduct." *Robinson v.*

*Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (Ill. 2002). In this case, plaintiffs' claim is based

on a practice that plaintiffs believe is unfair.

Defendant argues that plaintiffs have not plausibly alleged an unfair practice within the

meaning of the ICFA. In "determining whether a given course of conduct or act is unfair,"

courts must consider three factors: "(1) whether the practice offends public policy; (2) whether it

is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury

to consumers." *Robinson*, 201 Ill.2d at 417-18. The Illinois Supreme Court has concluded that

plaintiffs need not establish all three. Rather, "[a] practice may be unfair because of the degree

to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*,

201 Ill.2d at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

### 1.      Public policy

Plaintiffs' theory on why Erie has engaged in conduct that violates public policy is that:

> insurance premiums are to be based on risk. The premiums charged and collected by Erie are excessive and not based on risk after the COVID-19 pandemic dramatically reduced the amount of driving and the number of insurance claims.

(Am. Complt. ¶ 65).

In support of their theory, plaintiffs cite the Illinois Appellate Court's decision in *Allstate Ins. Co. v. Keller*, 17 Ill.App.2d 44 (1958), where the Appellate Court, First District stated, "The cost of insurance is based upon the ratio of the claims paid to the risk written." *Allstate*, 17 Ill.App.2d at 49. The quoted sentence was part of that court's reasoning as to why an insurer did not need to show prejudice when denying coverage based on the insured's failure to cooperate (the insured had claimed to have been driving the automobile at the time of the accident when, in reality, someone else had been driving). The court said:

> Integrity should be the essence of the agreement. The cost of insurance is based upon the ratio of the claims paid to the risk written. It is the owners and operators of vehicles upon whom the financial burden of maintaining such contracts must ultimately fall. The insurer must primarily depend upon the veracity of the insured in reporting an accident. Collusive claims are difficult to detect. The courts cannot condone or support a doctrine that might ultimately make the cost of insurance protection prohibitive. For this reason, we are of the opinion that strict compliance is in the best interest of the public and not defendant's theory that failure to comply with the cooperation clause must be shown to be prejudicial to the insurer in order to constitute a breach which would allow the insurer to disclaim liability.

*Allstate*, 17 Ill.App.2d at 49. Understood in the proper context, the court's statement that "the cost of insurance is based upon the ratio of the claims paid to the risk written" cannot be said to

be a statement of the public policy of Illinois. Instead, it is merely a statement of how insurance generally works.

Even if the cited language constituted a statement of Illinois public policy, it would not help plaintiffs. Even a public policy requiring that premiums be based on risk is not the same as a public policy requiring that premiums set ex ante ought to be refunded if, ex post, the risk turns out to be different from what the actuaries calculated ex ante. As another Illinois Appellate Court explained:

> The general rule at common law is that if the policy is void from the beginning so that the risk never attached, the premiums must be tendered or returned by the insurer to the insured; but, if the risk attached, then the insured is not entitled to recover the premiums paid[.] . . . [T]he purpose of insurance is to distribute a risk, not to guarantee that there will be a covered loss. The premium is charged on the basis that there may or may not be a loss, not on a certainty that for each premium received there will be a covered loss. If an insurer could only retain a premium where the loss is covered by the policy, insurers would become insolvent.

*Harris Trust and Sav. Bank v. Illinois Fair Plan Assoc.*, 68 Ill.App.3d 934, 940 (Ill. App. Ct. First Dist. 1979). Plaintiffs do not allege defendant miscalculated the risk ex ante. Plaintiffs do not even allege that they should get a refund because they canceled the insurance policy in the middle of the term. Instead, plaintiff's theory is that it is unfair for defendant to retain a premium that was calculated for a risk that *changed*, because something (namely, the pandemic) occurred *after* the policy was issued that made many customers less likely to drive, such that, in *retrospect*, the premium seemed too high. That is not how insurance works. 5 *Couch on Ins.* § 79.7 ("an insured may not have any part of his or her premium returned once the risk attaches . . . for the insurer has, by taking upon itself the peril, become entitled to the premium").

In any case, Illinois public policy allows automobile insurers to price their insurance based *not just on risk* but also on economic (i.e., market) factors, as well. The Illinois Appellate Court recently explained:

> [T]he Illinois legislature has determined that open competition in auto insurance rates is workable and beneficial. Consequently, insurers, such as Allstate, are free to establish rates in response to their independent assessments of economic and market conditions, and the Department of Insurance has not been given the authority to set, approve, or disapprove of those rates.

*Corbin v. The Allstate Corp.*, 140 N.E.3d 810, 815 (Ill. App. Ct. Fifth Dist. 2019). The Court went on to say:

> Illinois has embraced open competition in regard to rate setting for auto insurance. In Illinois, insurers such as Allstate are free to establish auto insurance rates in response to their individual assessments of economic and market conditions.

*Corbin*, 140 N.E.3d at 816; *see also Ridings v. American Family Ins. Co.*, Case No. 20 CV 5715, 2021 WL 722856 at *6 (N.D. Ill. Feb. 24, 2021) ("Illinois has adopted an open-market approach for auto-insurance premium rates . . . Illinois's regulatory scheme does not determine what rates are fair."). In other words, insurers are *allowed* to consider supply and demand in pricing their automobile insurance. Thus, if defendant determined, after the pandemic struck, that it should refund some premiums in order to maximize its chances of retaining customers who might otherwise switch to a competitor (such as GEICO or Allstate), it was free to do so under Illinois public policy. It was also free to decide *how much* to refund, in order not to lose customers, without running afoul of Illinois public policy. Defendant is allowed to factor market conditions into its rates, so it's decision to return some but not all of the premiums (that plaintiffs allege were too high due to COVID) was not against Illinois public policy. In light of *Corbin*, it is clear that plaintiffs have not plausibly alleged and cannot allege that defendant's rate decisions in connection with the decrease in driving caused by the pandemic are against Illinois public policy.

### 2. Immoral, unethical, oppressive or unscrupulous

Plaintiffs have also failed to allege plausibly that defendant's rebate decision was immoral, unethical, oppressive or unscrupulous.

Plaintiffs allege that defendant's conduct was immoral, because it took advantage of COVID-19 "for its own financial gain." (Am. Complt. ¶ 67). That does not suffice. Seeking a profit is not inherently immoral, unethical, unscrupulous or oppressive; it is the essence of our free-market economy. Defendant is not in the insurance business for its health; it is in the insurance business to make money. "[I]nsurance [is] the assumption of another's risk for profit." *Garcia v. City of Bridgeport*, 306 Conn. 340, 355, 51 A.3d 1089 (Conn. 2012). That profit motive is not unethical, immoral or unscrupulous.

Likewise, nothing in plaintiffs' allegations suggest defendant's rebate decision or premiums were oppressive. *See, e.g., Robinson*, 201 Ill.2d at 420 ("Plaintiffs do not allege in their complaint that they were coerced into signing the leases because of dire alternatives threatened by [defendant]."); *Ekl v. Knecht*, 223 Ill.App.3d 234 (Ill. App. Ct. 2nd Dist. 1991) (plumber's threat to undo his work and turn off plaintiff's water unless he was paid immediately was coercive and oppressive). Plaintiffs have not alleged they were forced to take the policies. These plaintiffs had a choice with respect to whether to purchase their policies initially and in whether to renew their policies. Plaintiffs allege they chose to renew their policies even after the pandemic. (Am. Complt. ¶¶ 31-32). Offering a choice to a potential customer is not immoral, unethical, oppressive or unscrupulous, which is to say offering a choice is not unfair for purposes of the ICFA. *See Toulon v. Continental Casualty Co.*, 877 F.3d 725, 741 (7th Cir 2017) ("If [plaintiff] did not want to buy the Policy, she could have looked elsewhere to determine if other companies were selling long-term care policies [with different terms]. Because [plaintiff] was in

no way forced to buy the Policy, 'there was a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness[.]'") (quoting *Cohen*, 735 F.3d at 609); *Anthony v. Country Life Mfg., LLC*, 70 Fed. Appx. 379, 382 (7th Cir. 2003) ("[Plaintiff] had the opportunity to compare the ingredients of the Lo Carb and Lo Carb 2 bars with various other nutritional bars and in no way suffered a lack of meaningful choice necessary to establish unfairness.").

Plaintiffs' consumer fraud claim boils down to: the insurance company charged too much. The Illinois Supreme Court, however, has said, "charging an unconscionably high price generally is insufficient to establish a claim for unfairness." *Robinson*, 201 Ill.2d at 418; *see also Horist v. Sudler and Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("a generic allegation that [defendant] charged too much" does not state a claim for unfairness).

In short, plaintiffs have not plausibly alleged a practice that was immoral, unethical, oppressive, or unscrupulous. *See Ridings*, 2021 WL 722856 at *6.

### 3.    Substantial injury

Finally, the Court agrees with defendant that plaintiffs have not alleged a substantial injury. Where, as here, the plaintiffs could have avoided the harm by purchasing a different policy (or not purchasing it at all), they have not suffered a *substantial* injury. *Toulon*, 877 F.3d at 741 ("[Plaintiff] cannot establish a substantial injury because she could have avoided the harm by purchasing a different long-term care insurance policy from another company.").

For all of these reasons, this Court agrees with its colleagues who have dismissed claims that an insurance company's failure to reduce or rebate premiums due to the pandemic constituted an unfair practice under the Illinois Consumer Fraud and Deceptive Trade Practices Act. *See G.O.A.T. Climb and Cyro, LLC v. Twin City Fire Ins. Co.*, __ F.Supp. 3d __, __, 2021

WL 2853370 at *9 (N.D. Ill. July 8, 2021) ("An insurance contract cannot be called unfair under the ICFA simply because the purchase proved in hindsight to be a losing bet."); *Ridings*, 2021 WL 722856 at *6.

Plaintiffs have failed to state a claim under the ICFA. The defects are not curable. Accordingly, defendant's motion to dismiss is granted as to Count II. Count II is dismissed with prejudice.

### B.    Unjust enrichment

In Count III, plaintiffs seek relief for unjust enrichment. They assert that Erie was unjustly enriched by the retention of the excessive premiums.

The Seventh Circuit has held (and plaintiffs concede, Plf. Brief at 16/Docket 49 at 20), that where a party fails to state a claim under the ICFA, that party necessarily fails to state a claim for unjust enrichment. *Toulon*, 877 F.3d at 741-42 ("We agree with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA[.]"). Thus, Count III is also dismissed with prejudice.

### C.    Breach of Contract

Finally, in Count I, plaintiffs assert that "Erie's insurance contracts give it discretion to adjust premiums if the information on which those premiums are based changes or becomes incorrect." (Am. Complt. ¶ 51). Plaintiffs allege Erie "breached the insurance contracts by exercising its contractual discretion in violation of the covenant of fair dealing and good faith." (Am. Complt. ¶ 55). According to plaintiffs, defendant took advantage of plaintiffs by "profiting from the uncontemplated and unforeseeable COVID-19 pandemic." (Am. Complt. ¶ 57).

It is clear plaintiffs have not alleged a claim for breach of the terms of the contract. Both policies (EBCF's policy and the Palivos's policy) provide that the policyholder could request a

change.  EBCF Policy/Docket 45-1 at 17 ("**Your** policy may be changed by asking **us**.  . . . If **we** agree with **your** request, **we** will then issue a **Declarations**.  If there is a change in the information used to develop the policy premium, **we** may adjust your premium during the policy period effective as of the date the change occurred."); Palivos's Policy/Docket 45-2 at 15 ("You" may change this policy by asking "us."  . . .  If "we" agree with "your" request, "we" will then issue a "Declarations."  If there is a change in the information used to develop the insurance premium, "we" may adjust "your" premium during the policy period effective as of the date the change occurred.).  Plaintiffs have not alleged that they asked defendant to change their respective policies.  Even if they had, the policies go on to say defendant "may" adjust the premium if the policy is changed; the policies do not say defendant "must" or "shall" adjust the premium.  *See, e.g., Kingdomware Technologies, Inc. v. U.S.*, 579 U.S. 162, 136 S.Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *see also United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020) ("The use of 'may' is quintessential discretionary language.").  Accordingly, plaintiffs do not allege a breach of the plain terms of the contract.

Instead, plaintiffs argue defendant breached the contract by breaching the implied covenant of good faith and fair dealing.  "Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'"  *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill.App.3d 160, 165 (Ill. App. Ct. First Dist. 2004).

Illinois courts have noted that this principle is not an independent source of duties.  In

*Wolff v. Bethany North Suburban Group*, __ N.E.3d __, __, 2021 WL 1596329 at ¶ 62, for

example, the First District said:

> The duty of good faith and fair dealing is implied in every contract and requires a
> party vested with contractual discretion to exercise it reasonably, not arbitrarily,
> capriciously, or in a manner inconsistent with the reasonable expectations of the
> parties.  *The duty, however, is not an independent source of duties* for the parties
> to a contract, *and is 'used as a construction aid* in determining the intent of the
> parties where an instrument is susceptible of two conflicting constructions.'

*Wolff*, __ N.E.3d __, __, 2021 WL 1596329 at ¶ 62 (April 23, 2021) (emphasis added) (citations

omitted).  Here, there is no provision related to refunds that is susceptible of two conflicting

constructions.

Nonetheless, the Seventh Circuit, over the dissent of Judge Wood (who made the same

point as the Illinois Appellate Court in *Wolff* (*Wilson I*, 729 F.3d at 687-88)), allowed this sort of

claim to proceed.  *Wilson v. Career Educ. Corp.*, 729 F.3d 665 (2013) ("*Wilson I*").  The Seventh

Circuit said the plaintiff could show the defendant "breached the implied covenant of good faith"

by "prov[ing] that [defendant] exercised its discretion in a manner contrary to the reasonable

expectations of the parties." *Wilson I*, 729 F.3d at 675.  In *Wilson II*, the Seventh Circuit

clarified that the question of whether an expectation is reasonable must be judged *objectively*.

*Wilson v. Career Educ. Corp.*, 844 F.3d 686, 689 (7th Cir. 2016) ("the determination as to

whether an expectation is reasonable is an objective not a subjective determination.") (*Wilson

II*").

That is the type of claim plaintiffs are trying to state in Count I.  Assuming, as plaintiffs

do, that the discretion defendant had to change the premium ("'we' *may*") is the sort of discretion

a contracting party must exercise in a manner consistent with "the reasonable expectations of the

parties," plaintiffs still have not stated a claim.  Plaintiffs' allegation is that by "profiting" from

14

the pandemic, defendant "depriv[ed] Plaintiffs . . . of their reasonable expectations under the insurance contracts." (Am. Complt. ¶ 57). The allegation that plaintiffs' expectation is "reasonable" is conclusory, and the Court need not accept it as true.

Any expectation plaintiffs had that defendant could not "profit" from their insurance contracts, even if circumstances changed the absolute risk, is not *objectively* reasonable, as a matter of law. That is because such an expectation would be contrary to the very concept of insurance. 5 *Couch on Ins.* § 79.7 ("an insured may not have any part of his or her premium returned once the risk attaches . . . for the insurer has, by taking upon itself the peril, become entitled to the premium"); *see also Garcia v. City of Bridgeport*, 306 Conn. 340, 355, 51 A.3d 1089 (Conn. 2012) ("[I]nsurance [is] the assumption of another's risk for profit."). In rejecting a nearly identical claim, a District Court in Arizona explained:

> Plaintiff's argument ignores the inherent risk parties take on when entering into an insurance agreement. The insured necessarily accepts the risk that he will have bought a policy that he will not need, and the insurer necessarily accepts the risk that the insured's claims will be higher than the premium. Here, the risk that Plaintiff accepted has materialized. Although Plaintiff may argue in hindsight that the premium is unfair, that is not sufficient ground to show Geico has somehow breached an implied duty of good faith and fair dealing.
>
> If the Court were to accept the basis of Plaintiff's claim, it would necessarily hold that a party who has profited from a contract due to unforeseen events must pay its windfall to the other party. In that case, each and every contract would be at risk of a post-hoc good faith and fair dealing claim, which would corrode 'the predictability that an orderly commerce requires.'

*Jones v. GEICO Casualty Co.*, Case No. 20-1734, 2021 WL 3602855 at *4 (D. Ariz. Aug. 13, 2021) (citations omitted). This Court agrees. *Cf. Mid-West Energy*, 352 Ill.App.3d at 165 ("Parties are entitled to enforce the terms of their negotiated contracts to the letter without being mulcted for lack of good faith.").

Plaintiffs have not plausibly alleged and cannot allege that the parties' objectively reasonable expectations required defendant to issue a larger rebate. This defect cannot be cured by amendment. Count I is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [44] to dismiss. Plaintiffs' complaint is dismissed with prejudice. Civil case terminated.

**SO ORDERED.**

ENTERED: **November 12, 2021**

**HON. JORGE ALONSO**
**United States District Judge**